IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SULEYMAN DIRILTEN, MUSTAFA DIRILTEN, HUDAI DIRILTEN, and KAMIL DIRILTEN,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TALL GRASS HOMEOWNERS ASSOCIATION and JAMES SHEHEE,<br><br>　　　　　Defendants. | Case No. 11 C 5181<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

**I.　BACKGROUND**

　　The Plaintiffs, Suleyman Dirilten, Mustafa Dirilten, Hudai Dirilten, and Kamil Dirilten (the "Diriltens"), of Middle Eastern ethnicity, owned numerous lots in Tall Grass, a residential development located in Naperville, Illinois. The Defendant, Tall Grass Homeowners Association ("Tall Grass" or the "Association"), has issued a Declaration of Covenants and Restrictions which govern all property owners in the subdivision. Defendant, James Shehee ("Shehee"), is a property owner in Tall Grass and has served as President, Secretary, and as a Board member of Tall Grass Homeowners Association. The Diriltens have filed this suit pursuant to Sections 1981 and 1982 (42 U.S.C. §§ 1981 and 1982), seeking to redress what they contend is Defendants' unlawful and discriminatory contractual and housing practices directed against

them on the basis of race and ethnicity. They contend that they have been targeted and discriminated against by Tall Grass and some board members as well as residents because of their race and ethnicity. Specifically, they contend that residents of Tall Grass have been illegally dumping on their properties at various times and specifically on July 29, 2007, July 29, 2009 and at other times up to the present. They further allege that Tall Grass has billed them repeatedly for failure to maintain their lots and charged them excessive fees for lawn maintenance and clearing of debris dumped by other residents. They contend also that the Association brought multiple suits against them in state court to recover money spent by the Association for lot maintaining the Diriltens' properties. They further contend that they have been subjected to frequent racial and ethnically derogatory language by Shehee and other Board members. They further contend that non-Middle Eastern lot owners with similar or worse conditions on their properties have not encountered the fees and billing for maintenance work that they have encountered.

The position of the Board is that it has notified all residents on numerous occasions that dumping and vandalism was illegal but has told the Diriltens that it has no authority to enforce criminal laws but that they as well as other offended residents should notify the Naperville Police Department of any illegal dumping and vandalism. The Board notifies its residents by

way of its official news letter, *Whispers*. The Defendants also contend that there is no evidence, documentary or otherwise to support the contentions that any racial or derogatory terms were used by Board members against any of the Plaintiffs. They also claim that the Plaintiffs were not the only ones with maintenance issues with the Board and that many other owners were charged for the cost the board incurred in cleaning and maintaining their lots. Defendants do admit that Plaintiffs were the only ones actually sued by the Board to recover maintenance costs but that was only because the Plaintiffs had run up unpaid costs that were higher than any other property owner. They also contend that many of the Plaintiffs' complaints are time barred. They move for summary judgment.

## II.  LEGAL STANDARD

Section 42 U.S.C. § 1981 states that every person "shall have the right . . . to make and enforce contracts . . . as enjoyed by White citizens." The term "make and enforce" includes "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." The statute of limitations for Section 1981 is four years and starts to run when a party discovers or should have discovered an injury. *Cathedral of Joy Baptist Church v. Village of Hazelcrest,* 22 F.3d 713, 716 (7th Cir. 1994).

Section 42 U.S.C. § 1982 concerns racial discrimination in property transactions. It states that "all citizens shall have the same right in every state or territory, as enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real property." The act bars all "racial discrimination, both private and public, in the sale or rental of property, in other words to be free from racially motivated interference with property rights. *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 128 (1979).

### III. DISCUSSION

To establish either a Section 1981 or a Section 1982 claim, a plaintiff must show: (1) he is a member of a racial minority; (2) the defendants had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Morris v. Office Max, Inc.,* 89 F.3d 411, 413-414 (7th Cir. 1996). In relation to Section 1981, the Plaintiffs' claims would be under the right to make and enforce contracts - here the property declarations which entitle Tall Grass to enforce its property maintenance requirements. In relation to Section 1982 the Plaintiffs' claims would be essentially the same only in the real estate ownership context. *Id.*

The Plaintiffs can defeat summary judgment under both Sections 1981 and 1982 by using the indirect burden shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

To do so, Plaintiffs must first establish a *prima facie* case by establishing that (1) they are members of a protected class; (2) their performance met the legitimate expectations of defendants under the agreements at issue; (3) they suffered an adverse action; and (4) similarly situated individuals not in the protected class were treated more favorably. Once a *prima facie* case is established, the burden of production shifts to defendants to articulate some legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden is on plaintiffs that the stated reason is pretext. *Elkhatib v. Dunkin Donuts, Inc.,* 493 F.3d 827, 831 (7th Cir. 2007).

Here the Defendants do not dispute that as "middle easterners" the Plaintiffs are members of a protected class. In *Elkhatib,* the court held that Arabs, Middle Easterners, were a protected class. They do not dispute that Plaintiffs, in incurring costs and forced to defend a lawsuit, suffered adverse actions. However, Defendants do dispute, both that Plaintiffs' performance met their legitimate expectations and that similarly situated non-Middle Easterners were treated more favorably. They also contend that many of Plaintiffs' complaints occurred outside the statute of limitations (Section 1981 - 4 years, and Section 1982 - two years.)

With respect to the two disputed aspects of their cases, Plaintiffs put forth the following allegations of fact, which they contend are supported by the record:

1. Suleyman Dirilten testified that at some unspecified time and place he was told by Laurie Wise and Barb McKibben, on-site managers, employed by management companies hired by the Tall Grass Board of Directors, that certain letters and requests sent to them were "ridiculous and unfair" and other builders were not held to the same standard as the Diriltens.

2. Suleyman testified that at some unspecified time he saw a group of residents talking and one of them was dumping flower pots on Hudai Dirilten's lot. Defendant Shehee happened to be outside on his driveway at the time and did nothing to stop it. However, Suleyman could not say whether Shehee actually saw the dumping.

3. Mustafa Dirilten observed dumping on the Plaintiffs' properties by neighbors at some unnamed periods. However, he did not observe whether or not there was dumping on other lots not owned by the Diriltens.

4. Marc Menendez testified that he was a resident of Tall Grass since 2001 and was on the Board from the Fall of 2001 until 2005 or 2006. In 2005, he was asked by the Board to meet with Suleyman, Mustafa, Hudai and Kamil Dirilten to address concerns the Board had regarding their properties. At the time the Board and particularly Jim Shehee had a lot of problems with the Diriltens. He felt that "Shehee treated the Diriltens quite differently than he treated other builders who owned Tall Grass lots." "He was very

aggressive regarding his concerns about the Diriltens' lots. He did not display this same aggressive attitude regarding other builders' lots." He believed that at the time "the Diriltens' ethnic background was a factor of why Shehee treated them differently."

5. In the Spring of 2010, Suleyman observed a contractor for the Board mowing one of his lots which he had mowed the day before. Suleyman called the police contending that the contractor was trespassing. The police suggested that they discuss the incident with the property manager. The result of the meeting was that the manager instructed the contractor to not cut any more of the Dirilten lots that had been recently cut.

6. In 2010 the Board decided to proceed with a collection action against the Diriltens, and according to Suleyman, "to the best of my knowledge" did not pursue any litigation against any other developer.

7. Certain residents dumped on the Suleymans' lots on unspecified occasions.

The problem faced by the Plaintiffs is that their proposed statements of facts are short of specifics, such as who, what, where and when. This is particularly important where, as here, the defense of statute of limitations is pled as an affirmative defense. Since the statute of limitations in a Section 1981 action is four years (the statute of limitations for Section 1982 is two

years), and this suit was filed on July 29, 2011, acts that occurred prior to July 29, 2007, are barred unless extended for some reason. Plaintiffs contend that the limitation bars only acts occurring prior to the expiration date of the statute of limitations. This of course is true. The fact that certain acts of discrimination are not actionable does not, of course, insulate the party from its acts of discrimination that occur within the statute of limitation. However, the alleged discriminatory acts on the part of the Defendant Shehee, which are described as treating the Diriltens differently from other property owners, as related by Marc Menendez in an e-mail, occurred in 2005, well outside the statute of limitations. Thus, to the extent that they might have been actionable under either Section 1981 or Section 1982 are time barred. This is reinforced by the deposition testimony of Suleyman where he stated that he felt discriminated against when he heard of the Menendez e-mail.

The continuing violation doctrine does not help Plaintiffs either. This doctrine does not apply to discrete acts of discrimination. Assuming that the e-mail showed an act of discrimination, which it arguably does not, it was discrete enough so as to catch Suleyman's attention. *See, Nat'l RR Passenger Corp. v. Morgan,* 536 U.S. 101, 110-14 (2002).

The incidents involving dumping on the Plaintiffs' property by other residents as set forth in Plaintiffs' Statement of Additional

Facts cannot support either a Section 1981 or a Section 1982 action because such acts were committed by non-defendants. There is no allegation that the Defendants approved or participated in such dumping with the possible exception of the claim that some dumping occurred in the presence of Defendant Shehee. However, Suleyman testified that he could not say that Shehee had actually seen the dumping, and, in any case, it appears to have occurred outside the statute of limitations. The only allegation is that the Tall Grass management failed to prevent the dumping and refused to fine those doing the dumping. There is no indication however that Tall Grass had authority to levy a fine and it contends that it did not have such authority. Moreover, the cleanup fees that the Plaintiffs are complaining about as far as the Court can tell involved only mowing and not debris removal.

The incident involving the "mowing" of the Diriltens' lots after they were mowed by the Plaintiffs, appeared to be a result of a misunderstanding. When it was brought to the attention of the Tall Grass management, the contractor doing the mowing was ordered to cease such mowing. There is no indication that Tall Grass attempted to collect the mowing charges for the lots mistakenly mowed.

The only "act" that could possibly be actionable is the filing of the suit to collect the costs of maintaining the Diriltens' lots. Although the filing date is not disclosed in the record, the

Court assumes for purpose of the Motion that it was filed within the applicable limitation period. It is alleged, again, "to the best of [Suleyman's] knowledge" that Tall Grass only sued the Diriltens. This is short of a definitive statement and indicates speculation on Suleyman's part. However, even if it is not speculative, nevertheless the Plaintiffs cannot rely on this act to prove discrimination. The Defendants have asserted that the reason why suit was filed against the Diriltens was because they owned over $10,000 in unpaid maintenance costs charged to them by Tall Grass. The Defendants have filed as its Exhibit J Tall Grass' records of charging property owners for maintenance costs, and it appears that many property owners other than the Plaintiffs were charged for lot maintenance. Plaintiffs have made no effort to document whether any other property owner owned such an amount and was not sued. Thus, the Plaintiffs have not come up with any evidence for which the Court could make a finding that Tall Grass treated any non-Middle Easterner more favorably. Exhibit J is replete with documents showing that Tall Grass charged other developers with maintenance fees so that the Diriltens were obviously not singled out. Another reason perhaps why Tall Grass may not have sued other builders is those others may have paid their bills prior to being sued. The record does not provide answers to these questions. Therefore, Plaintiffs cannot prove

that similarly situated individuals of a non-protected class that were treated more favorably.

Since it was incumbent upon the Plaintiffs to establish a *prima facie* case to avoid summary judgment, their failure to show that non-Middle Easterners were treated more favorably dooms their Section 1981 and Section 1982 claims.  Accordingly, the Defendants' Motion for Summary Judgment is granted as to both the Section 1981 and Section 1982 claims and the case is dismissed with prejudice.

### IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted.  The case is dismissed with prejudice.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　／s／ Harry D. Leinenweber
　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　United States District Court

Date:7/2/2014